Matter of Parody v Old Dominion Frgt. Line (2018 NY Slip Op 00219)





Matter of Parody v Old Dominion Frgt. Line


2018 NY Slip Op 00219


Decided on January 11, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: January 11, 2018

525176

[*1]In the Matter of the Claim of SCOTT M. PARODY, Claimant,
v
OLD DOMINION FREIGHT LINE et al., Appellants. WORKERS' COMPENSATION BOARD, Respondent.

Calendar Date: November 16, 2017

Before: McCarthy, J.P., Lynch, Devine, Mulvey and Aarons, JJ.


Goldberg Segalla, LLP, Syracuse (Cory A. DeCresenza of counsel), for appellants.
Eric T. Schneiderman, Attorney General, New York City (Steven Segall of counsel), for Workers' Compensation Board, respondent.




MEMORANDUM AND ORDER
Lynch
, J.
Appeal from a decision of the Workers' Compensation Board, filed September 7, 2016, which ruled that claimant had a 55% schedule loss of use of his right leg.
Claimant sustained a work-related injury to his right knee in December 2013 and filed a claim for workers' compensation benefits. He was diagnosed by his treating orthopedist, Glenn Axelrod, with a lateral meniscus tear, a medial meniscus tear,
chondromalacia of three compartments of the knee (medial femoral condyle, lateral femoral condyle and patella) and synovitis. He underwent knee surgery in March 2014 and was cleared to return to work in April 2014. Claimant's workers' compensation claim was established for an injury to his right knee and proceedings were subsequently conducted by a Workers' Compensation Law Judge (hereinafter WCLJ) on the issue of permanency. In connection therewith, Axelrod issued a report opining that claimant suffered a 25% schedule loss of use (hereinafter SLU) of his right knee. However, Stewart Kaufman, an orthopedic surgeon who conducted an independent medical examination of claimant, opined that claimant suffered a 50% SLU of his right knee. The WCLJ credited the opinion of Kaufman over Axelrod and awarded claimant benefits based upon a 50% SLU of his right leg. On appeal, the Workers' Compensation Board modified the WCLJ's decision and awarded claimant benefits based upon a [*2]55% SLU of his right leg. The employer and its workers' compensation carrier (hereinafter collectively referred to as the employer) now appeal.
The employer asserts that the Board's decision is not supported by the medical evidence or application of the New York State Guidelines for Determining Permanent Impairment and Loss of Wage Earning Capacity (2012) (hereinafter the guidelines). Preliminarily, we note that both Axelrod and Kaufman referred to the guidelines in rendering their opinions. Axelrod indicated that, pursuant to special consideration 9 of section 3.2 of the guidelines addressing loss of use of the knee, claimant's medial meniscus impairment resulted in a 10% loss of use. He further indicated that, pursuant to special consideration 4 of the same section, claimant's lateral meniscus impairment and chondromalacia patella each resulted in a 7.5% loss of use which, when combined with his medial meniscus impairment, resulted in a total SLU of 25%. Axelrod did not find that claimant had a limited range of motion or atrophy and did not assign a percentage of loss due to these factors.
Kaufman, on the other hand, did find that claimant had a limited range of motion and atrophy causing a flexion deficit of 0 to 105 degrees that, according to table 3.2 of the guidelines, resulted in a 30% loss of use. He further found, applying special consideration 4, that claimant's medial meniscus and lateral meniscus impairments, with atrophy, resulted in a 20% loss of use. Consequently, he opined that claimant suffered a total SLU of 50%.
In rendering its decision, the Board credited Kaufman's medical opinion that claimant had a range of motion limitation over Axelrod's contrary opinion, which it was clearly entitled to do (see Matter of Grugan v Record, 84 AD3d 1648, 1649 [2011]; Matter of Cullen v City of White Plains, 45 AD3d 1167, 1168 [2007]). However, the Board disagreed with Kaufman's finding that claimant's flexion deficit of 0 to 105 degrees resulted in a 30% loss of use and concluded that it was 25% based on table
3.2 (9)[FN1]. The Board further found that Kaufman failed to make separate findings with respect to claimant's medial meniscus impairment, lateral meniscus impairment and chrondromalacia patella, and proceeded to assign a 10% loss of use to each, resulting in a total SLU of 55%. The Board is free to accept or reject all or part of medical evidence that is offered (see Matter of Scott v Manhattan & Bronx Surface Tr. Operating Auth., 132 AD3d 1048, 1049 [2015]; Matter of Ferber v New York Dept. of Corrections, Adirondack Correctional Facility, 220 AD2d 915, 916 [1995]). Factoring in the limited range of motion identified by Kaufman with each of the three impairments indicated by Axelrod, the Board assigned a 10% loss of use to each category pursuant to special considerations 4 and 9, which allow for an increased loss of use percentage where there is both a joint defect combined with a loss of motion or muscle atrophy. Since this determination comports with the medical evidence and is supported by substantial evidence, we affirm.
McCarthy, J.P., Devine, Mulvey and Aarons, JJ., concur.
ORDERED that the decision is affirmed, without costs.



Footnotes

Footnote 1: We note that this finding is supportable inasmuch as table 3.2 of the guidelines assigns a 20% loss of use to a flexion deficit of 110 degrees and a 40% loss of use to a flexion deficit of 90 degrees.